Good morning, your honors. May it please the court. Mr. Palmer. In your de novo review of this case, you will see that the district court minimized the internal conflicts with Officer King's statement, and also it failed to focus on the conflicts between Christophe's statements and King's statements. That's what this court had to do and interpret those facts favorable to us, because the Eighth Circuit has been extremely consistent with their view that you have to look at the totality of the circumstances, the severity of the crime at issue, whether or not the suspect poses an immediate threat to the safety of the officers, and whether the suspect is actively fleeing or resisting arrest in this case. This was just not something that was at issue. But what I found more than anything in looking at the Eighth Circuit cases and how they interpret this is they really get into the facts. And what I want to do this morning, unless the court directs me otherwise, to look at the facts in this case. In a minute and a half, they were in this house where Ms. Boyd was alleged to have been committing suicide. Four officers go in. Two of them proceed upstairs. And as they proceed upstairs, we know that Christophe is ahead of King. That's undisputed. We also know that neither one of them admits that the gun was pointed at either of them through this confrontation. We also know that there were inconsistent statements made by King with regard to the weapon. And this is what he said that is inconsistent. One, that Christophe's finger was not on the trigger. His finger was on the trigger. And yet in his after statement, even though not in his deposition, he says that Marilyn's, Ms. Boyd's, finger was on the trigger. Now, he's to her left. Christophe is facing her directly. They are ordering her to come out of the bedroom. As she walks out of the bedroom, following her directions, King says, well, she was unresponsive. Christophe says she was responsive and answered what her name was. She told them to go away. King says, well, I didn't hear any of that conversation. So she walks out of the house, walks out of her bedroom. They all agree at one point that the weapon is only pointed at the shin level prior to the shot. Even though Christophe has said he's seen the weapon come up to her head and come back down again, not in their direction at all. Both King and Christophe agree with that, with their weapons out. That's enough to go to a jury. What did you mean by pointed at the shin level? At whose shins? At the officer's shin level? Demonstrates in his DCI statement that it comes up. Later on, he says, I'm looking down the barrel of a gun, but we know that never existed. That's a conflict. But is it undisputed that she was pointing it at their shins? She was raising it. She raised it. Raised it is what they agreed later that the district court judge relied on, that both agreed after they kicked the gun away that she was in fact raising the gun up. Is that enough to justify use of force if she raised it up, even if it's only to shin level? What I think is the issue is whether or not that's enough to create a jury issue for us to go forward and should those facts have been interpreted in that light, as opposed to how the district judge interpreted those facts. That was a jury issue. A jury issue on what then? A jury issue on whether or not there is a conflict in the facts between the officers. And I go back to the Wilson v. City of Des Moines case. Go ahead. I don't want to interrupt you, but I just want to make sure I understand what you say is the fact issue. If you're saying the fact issue is whether the gun was raised to point directly versus lower. Correct. That's the fact issue. But I think what Judge Woolley was saying is even if it was only the lower, that that's enough to get them qualified immunity. What's wrong with that? It's terribly wrong. And I'll tell you why. The first factor is wrong because both officers did not make that observation at the time it was raised. Christoph never said it was pointed at him until after the fact when they kicked the gun away. That's the first thing. The second thing is that Christoph, who was engaged in a conversation with her that Mr. King, Officer King, had never heard, was actually trying to calm her down at that point. Officer King said he never heard any such conversation that she never responded. So Christoph, directly in front of her from five to seven feet, had the best observation. So consequently, his testimony conflicts with King's, which creates a jury question. Opposing counsel's brief says that King's remark after the shooting heard on his body, Mike, confirms the threat he perceived. He said, I saw it, too, is what he said when he said, did you see her raise the gun? And he says, I saw it, too. But that's still a conflict that creates a jury question. That's what we're trying to get to whether or not those facts should have been interpreted to say that was objective, reasonable as a matter of law. If you go back and look at your 2002 case, and interesting enough, as I was saying to Judge Beam this morning at breakfast, I actually argued that case but didn't know it when I was doing the research on it. In that case, the Eighth Circuit, after Judge Longstaff did not dismiss the case, they raised it on appeal. And Judge Longstaff and the Eighth Circuit said two things you look at, the internal conflicts. So if we can see the conflicts in Officer King's testimony, which Judge Woolley did not see or approve, or the conflict between the two officers, that is sufficient. That's why in my opening statement I said he really minimized that, and he didn't really interpret those facts favorable to the non-movement. He interpreted all those facts favorable to the movement in that case. Well, why doesn't Aperspack, and I guess Morgan v. Cook, those cases had some inconsistencies and questions, but nonetheless, the perception, the objectively reasonable perception of a threat was sufficient for qualified immunity. Why doesn't that apply here? I'll tell you why it doesn't apply. Because the Eighth Circuit has done something else, too, with regard to these cases. They look at the unique facts of the case. The closest case we could come to, obviously, is the Partlow case where the gentleman comes out of the house where he's been threatened to commit suicide. In that case, he walks out of the house. He has a danger to other people at that point. He has a shotgun. In this case, it's just the opposite of that. She's in her house. They know before they go in that she doesn't have a weapon, that she does have a weapon, and they've given her a description of what the weapon is. So it should not have been a surprise to them when they went up the stairs in that 18 seconds to confront her with the weapon that that's what they were going to find. Because they told her, and when Christophe yelled, gun, that was not a surprise to them. So to go back, Judge Logan, and answer your question, you have to take all of the facts in perspective. This is a person who's inside of their home, never out in public, nobody else at threat. And, you know, that's the question that kept troubling the district court judge in this, and I think that's why he got a little bit sidetracked. He kept saying, well, the most troubling aspect on page 25 of his transcript, he talks about that in the hearing. He says the most troubling aspect of the case, why didn't the officers just walk away? Well, obviously, we can't get to that on the Eighth Circuit law until after we show that there was a constitutional violation, which we believe it is under the facts of this case. We can then get that, so in our final jury instructions, we can present to the fact finder, which should be the jury in this case, not the judge, that, look, if she came in and she was not a threat to anybody, should these officers have walked out of the house? And that's what Judge Woolley kept asking. He asked that question twice. He started it, he was interrupted, and he started again. He says, look, why didn't they just leave? So let me go back to make sure I understand exactly what you say are the disputed facts. Judge Woolley says that King, after the shooting, King says, she raised it up, Kristoff. And then Kristoff says, she did, I saw it. Now, I know you say that she only raised it up to the shin level, but do you agree that it's undisputed that she raised it up in some level? I believe it's undisputed at that point. It doesn't become disputed until after she's laying on the floor dying, after she's been shot for the third time, after the first two bullets moved her back into her bedroom. Then she's shot a third time by this officer after he said it was a deliberate pull of the trigger for the third time. Why didn't he just shoot her once if it stopped her? To answer your specific question, though, is we are not conceding that, and this is why. Because as they're standing there, Judge Collins, as they're standing there, Kristoff doesn't have his finger on the trigger. He's still trying to talk her down. Now, he does not say at that point that she's pointing the weapon at me. If you look at his testimony, at his deposition, and also his testimony at his DCI interview, he does not say that, neither does King say at any point in time it was pointing at them. They contradict each other several times with regard to that point, and those are the points we think that the district court judge minimized. The other thing he says is that she was, I forget how he puts it exactly, but something to the effect that she was holding it shakily or waving it shakily. Do you remember that? I do. Is that undisputed? She was holding it shakily, and Kristoff says that he watches her raise it up at one point, away from them, puts it back down. Now, you understand at this point, King is still on the level, he's not fully up on the platform with the hassle. He doesn't see this, or we think a jury would find that perhaps they didn't see it. Perhaps he didn't see it, so when he comes all the way up, he then sees that she's now raising this gun up, perhaps for the second time, but to Kristoff, it's the second time. For King, it may be the first time. And those are the disputed facts with regard to that, Your Honor, that we think a jury should decide. To say that it's undisputed, we won't go that far. We think there is a question, a jury question about it that's disputed that perhaps the district court judge should not have found that as an undisputed fact sufficient to give these officers qualified immunity. Okay. Thank you, Judge. Mr. Palmer? May it please the court, the counsel? I first want to dispel the notion that there are any disputed facts in this record that would prevent this court from affirming the district court's ruling. Plaintiff's counsel talks about internal conflicts between Officer King's statements and his testimony. I still don't know what those are. The brief is devoid of how he, his statements are different from his statement to the DCI and his deposition testimony. Moreover, there's no external conflicts between what Officer Kristof has stated to the DCI in his deposition testimony and what Officer King said. For instance, Officer Kristof, this is at the appendix 256, believed Ms. Boyd was going to point the gun at him. He further continues he believed his life was in danger and he was about to shoot, but King shot first. Kristof further believed Boyd was raising the weapon, was threatening deadly force against him. That's at the appendix 321. He further stated the gun was being raised in his general direction and around my shin level and she may be attempting to shoot me. That's at the joint appendix 321 and 22. Finally, and this is a quote, Officer Kristof states, when I realized her weapon had come up to about my shin level. Once again, he says again, up to my shin level. I was, I did interpret it at that point that it was being raised in my general direction. I realized she may be attempting to shoot me. Right about that time is when Aaron fired rounds to stop the threat. Officer Kristof has made it very clear that the gun was raised to his shin level. Why do you think Judge Woolley never recited that as an undisputed fact? He just said confronted by a reportedly suicidal Boyd who shakily moved the arm in which she held the gun, King made the decision to fire. I don't know why he did. It was a rather short opinion. He didn't go through the recitation of facts that I think we laid out in our summary judgment papers. He chose to be very, very straightforward and simply state that the force that Officer King used was objectively within reason. Do you think a person with a shakily moving the arm in which she held the gun would be enough to justify the use of force? Or do you think you need an undisputed fact that she pointed it at the officers? Well, two things. One, the shakily gun, I think that is Judge Woolley's description. And I noticed that during his opinion. But I don't think that's anywhere found within the record. Certainly both officers talk about her waving it around, but not shakily with the hand. Number two, whether she was shakily moving the gun is without any import. She can still obviously shoot it. Whether it was shakily moving up Officer Kristof's body, it's still a threat at that time. So that is a non-material fact that the jury has no reason to decide. And Officer King, in his DCI statement, stated that the gun was on Kristof's lower body. That's at Joint Appendix 244. He further stated, I was just scared she was going to shoot Officer Kristof because she had the best angle on him, because it was in her right hand and was coming around him. We talked about the microphone, in which he stated right after the shooting, she raised it up, Kristof, and his response, she did. I saw it. Now, one of the issues here is that during the deposition with Officer King, plaintiff's counsel is really focused on was the gun pointed? Was the gun pointed at Officer Kristof? And Officer King made this comment on Joint Appendix 310. It's very clear that your definition of pointing is different than mine. That's what Officer King stated. Officer King continued in his deposition testimony that the gun was being raised to the shin level of Officer Kristof. And we know from the case law that that is objectively within reason for him to fire the weapon. There was probable cause at that point that serious harm or death would occur. And in this very tense, moving situation, this court time and time again has said we're not going to have 20-20 hindsight when there's a split-second decision based upon a law enforcement officer's conduct. This case is not, even if this court believes that there is a disputed fact. First of all, it's not the Caps case, and it's not the Wilson v. Des Moines case, where in those cases there was clear material contradictions on how the shooting occurred. In Caps, there was a dispute whether Caps had a knife and was running toward the officer. And there was that dispute because it was clear from the autopsy that Caps was shot in the back. We don't have that here. We don't have a situation where Ms. Boyd was shot in the back and whether she was fleeing or leaving or not. We don't have that. And in Wilson, once again, there was legions of fact disputes on how he was standing, whether he had one hand on the gun, what type of stance he had. There was even a dispute whether he was armed. And in fact, in Wilson, he was not armed. So this is not a situation where we have material disputed facts on how the shooting occurred. Now, even if the gun was not raised to the shin level, which I think it is undisputed that it was, Officer Kristoff has said it time and time again, and Officer King has said it time and time again, it was still objectively within reason. If you look at the Sinclair case versus the City of Des Moines, this court stated that the district court properly concluded that no constitutional or statutory right exists that would prohibit a police officer from using deadly force when faced with an apparently loaded weapon. It is undisputed here that Ms. Boyd had a weapon. It is undisputed that she was told approximately 20 times to drop that weapon, and she did not. It is undisputed, prior to the shooting, she had waved it around. Again, in Thompson, this court stated that an officer is not constitutionally required to wait until he sets eyes upon the weapon before employing deadly force to protect himself against a fleeing suspect who turns and moves as though to draw a gun. Now, this isn't a fleeing situation, but certainly in Thompson, the court said, we're not going to hold a police officer to that standard,  but here, we knew that there was a gun present. We told her 20 times to drop the gun, and she did not. So for those reasons, the shooting was undoubtedly within reason. Second of all, I would note that the plaintiffs obviously have the burden to prove that Officer King violated a clearly established right. Certainly, the Supreme Court... That wouldn't end the case. I'm sorry? That wouldn't end the case because then it would still have to be remanded for the failure to train, failure to supervise claim. Well, if there's not an underlying constitutional act, I believe... If the only basis for qualified immunity is not clearly established, then that does not mean there was no constitutional violation, and therefore, more analysis is needed on the failure to train claim. I think in theory, that's right. It's more than theory. Agreed. Case law. But in this case, that wouldn't be correct because the plaintiffs have set forth no facts to show that the city or the chief was deliberately indifferent to this alleged improper training. But that wasn't before the district court. The summary judgment motion was qualified immunity, right? It was before the district court. The court's ruling only talked about that. The summary judgment addressed all four counts and addressed that training issue, and it's clear based upon the record that there was not even one prior occurrence of this type of a situation that would alert the city, that would alert the chief of police, that there was an improper training issue and even rise to the level of being deliberately indifferent. So as it relates to this case, I think that would, in this matter, because there's certainly no case law that would suggest that a clearly established right was violated here, even if this court would conclude that there was a disputed fact, whether it was raised to the shin level or not. Certainly when you look at Sinclair, Thompson, and the numerous cases cited by this court. So for those reasons, Your Honor, we believe that this court should affirm the district court ruling. Thank you. For rebuttal? Thank you. I want to first of all say that we did have an expert, Dr. Lyman from Missouri, who did testify about training issues. And Judge Logan, we would agree that issue was not presented in front of Judge Woley. The second thing, there was evidence about the gun being shaken. I believe Christoph may have made reference to that in his DCI statement or his deposition statement. So I believe that information is out there. In the Camps case, where he talks about the four bullets, I believe that was one of Judge McGaughy's case. In that case, there were four bullets in the front, I think, and one in the back. And he said that created a factual issue, even though you couldn't establish at which point it was done. So that was enough to create a dispute, which basically goes to our argument in the Wilson case and the other cases you mentioned here. And that is that the court looks for facts that are favorable. And let's talk about what the Eighth Circuit has done, which I, in studying these lines of cases, talk about the uniqueness of what the Eighth Circuit has done. They look at the unique case. In each case we've talked about here today, in each case you've had before the Eighth Circuit, you had them out in public. You can't come up with one case, except one where a fellow is sitting there, I think, in his apartment. He goes in with someone else, and then they try to arrest him or something. That was that case. But there's no other case where a person was trying to commit suicide where an officer goes in, in these unique circumstances, within 18 seconds after they head up the stairs, she's dead. Shot twice in the chest and once in the abdomen. In a home by herself, which they knew in advance she was in a home by herself, knew in advance when they were going up the steps that she had the weapon, knew in advance that she had been drinking, knew all of these factors and knew they had no authority to go in there because the person who made the call said, look, I don't even have authority to let you go in there. I question whether or not you can break the door down, which was her son, who didn't even live in the apartment. So you have those unique facts that when looking at the totality of the circumstances that this court has always reviewed, it's never reviewed these facts in isolation. It's talked about, how do we get here? How did these officers get in there? And then once they get up the steps, I totally disagree with counsel in this case, for Ankeny and King and Kristoff, because their statements are inconsistent with each other. And Judge Collinson, you are exactly right. Judge Woolley did not break down the other facts that were in dispute because he interpreted all the facts favorable for the city of Ankeny and the officers. There were disputed facts as how the gun was pointed, where it was being held, where they were standing, the observations that Mr. King had as opposed to what Mr. Kristoff had, the fact that he was engaging her in conversation and was trying to talk her down, which was his comments. That's what he said under oath. So those are disputed facts that does not establish qualified immunity. A jury should decide this case, and that's all we're asking this court to do. Thank you. Thank you, counsel. The case has been well briefed and argued, and we will take it under advisement.